<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF THE VIRGIN ISLANDS
## ST. CROIX DIVISION

K. Glenda CAMERON, Esq., et al.,

            Plaintiffs,                      Civ. No. 10-126

v.

Lee J. ROHN, Esq., et al.,

                                        OPINION

            Defendants.

<u>THOMPSON, U.S.D.J.</u>

        This matter has come before the Court on Defendants Lee J. Rohn, Esq. ("Rohn"), Lee J. Rohn, P.C. ("Rohn P.C."), The Law Offices of Rohn and Carpenter, LLC ("Rohn & Carpenter"), and The Law Offices of Lee J. Rohn, LLC's ("Rohn LLC") (collectively, "the Rohn Defendants" or "the Defendants") Motion for Judgment on the Pleadings [docket # 135] seeking to dismiss certain counts in Plaintiffs' Amended Complaint [15] pursuant to Fed. R. Civ. P. 12(c), arguing that Plaintiffs lack standing to bring certain claims or have otherwise not stated a claim upon which relief may be granted.  Plaintiffs K. Glenda Cameron, Esq. ("Cameron") and K. Glenda Cameron, P.C., individually and as a member of the Law Offices of Rohn and Cameron, LLC (Cameron P.C.) (collectively, "Plaintiffs" or "the Cameron Plaintiffs") have opposed this motion [148–149].  For the following reasons, the Rohn Defendants' motion will be granted in part and denied in part.

## I.    BACKGROUND

For the purpose of deciding this motion, the Court accepts as true all of the well-pleaded

factual allegations contained in the Amended Complaint and it draws all inferences in favor of

the Plaintiffs. *See Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 799–800 (3d Cir.

1996).

This dispute arises out of the relationship between Rohn and Cameron and the breakup of

their former law partnership, The Law Offices of Rohn and Cameron, LLC ("the Law Office").[1]

The Law Office is a Virgin Islands limited liability company (LLC), which began operation in

2005 but is no longer authorized to conduct business due to a failure to file annual reports

beginning in 2008. (Am. Compl. ¶¶ 8, 52). Although Cameron and Rohn never signed a written

partnership agreement or a written LLC operating agreement, at the time that the Law Office

began operation, Cameron and Rohn agreed on the essential terms under which the Law Office

was to be operated, which were memorialized into a draft agreement ("the Operating

Agreement"). (*Id.* ¶¶ 47, 53). These terms included the following: all cases initiated after 2000

would be transferred to the Law Office, and fees from those cases would be split 70% to Rohn

and 30% to Cameron, (*id.* ¶ 48); Rohn and Cameron would have an ownership interest in the

Law Office, also in accordance with the 70/30 split, (*id.* ¶ 47); Cameron's "sweat equity" that

she contributed to Rohn LLC from 2000 through 2004 satisfied her ownership interest and she

would not be required to make an initial contribution, (*id.* ¶ 49); Cameron would receive a

guaranteed base salary of $400,000 in addition to normal distributions from the Law Office, (*id.*

[1] The Law Office was owned by the artificial entities Cameron P.C. and Rohn P.C. (Am. Compl. ¶ 52). For ease of discussion, the Court may refer to Cameron and/or Rohn throughout this Opinion as though they individually were members of the Law Office. Furthermore, although the pending motion is premised on the allegation that Plaintiffs do not have standing to assert their claims under certain counts of the Amended Complaint, neither party raises the issue of whether Plaintiff Cameron has standing to bring certain claims in her individual capacity, as she was not a party to the LLC Operating Agreement. Because the parties have not addressed it in their briefs, the Court will not consider this issue at this time. Rather, the Court will treat both Plaintiffs as one in the same for purposes of deciding this motion.

2

¶¶ 50, 51); and the new LLC would pay operating costs for all cases, even though it would not receive fees from pre-2000 cases, (*id.* ¶ 51). The unsigned Operating Agreement defined Rohn as the majority interest member in the Law Office, with the right to make all major decisions. (*Id.* ¶ 54).

Shortly after the Law Office commenced operations, problems started to occur. Plaintiffs claim that after the formation of the Law Office Rohn engaged in numerous fraudulent and unlawful acts. For example, Rohn allegedly: (1) took revenue from the Law Office and redistributed it to other Rohn-controlled business entities, (*id.* ¶ 61); (2) issued unauthorized personal loans to the Law Office, thereby putting it in debt to other Rohn-controlled entities, (*id.* ¶ 69); (3) asked Cameron to make non-interest bearing loans to the Law Office in order to support it (*id.* ¶¶ 71–74); and (4) used the operating account and the credit card of the Law Office for personal purchases on behalf or herself, her boyfriend, and other Rohn-controlled entities, (*id.* ¶¶ 86, 90, 91). All of these acts occurred while Cameron was still a member of the Law Office. These accounting irregularities and the misuse of Law Office funds, along with a failure to properly file tax returns on behalf of the relevant entities, caused Cameron to ask for dissolution and winding up of the Law Office. (*Id.* ¶ 108). Rohn, however, refused to provide a proper accounting. (*Id.* ¶ 109). Following Cameron's request to dissolve and wind up the affairs of the Law Office, but prior to her distributional share being purchased by Rohn, P.C., Rohn transferred the assets of the Law Office to another Rohn-controlled entity, Rohn & Carpenter. (*Id.* ¶ 112). Plaintiffs dissociated from the Law Office on January 1, 2009. (Notice of Member Withdrawal [docket # 41-2]).[2]

---

[2] Consideration of this document is appropriate in deciding this motion. *See infra* Part III.b.

## II.   LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). The standard governing a Rule 12(c) motion is the same one governing motions to dismiss under Rule 12(b)(6). *Allah v. Hayman*, No. 11-2460, 2011 U.S. App. LEXIS 17860, at *8 (3d Cir. Aug. 25, 2011); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). Therefore, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

4

## III.  ANALYSIS

The Rohn Defendants argue that Plaintiffs' claims under counts two (RICO claim against Rohn), three (CICO claim against Rohn), six (Breach of Fiduciary Duty claim against Rohn and Rohn P.C.), seven (Conversion claim against Rohn, Rohn P.C., Rohn & Carpenter, and Mary Faith Carpenter ("Carpenter")), nine (Unjust Enrichment claim against Rohn, Rohn P.C., Rohn & Carpenter, and Carpenter), and ten (Fraudulent Conveyance and Constructive Trust claim against Rohn, Rohn P.C., Rohn LLC, Rohn & Carpenter, ABC Trust, NLR Trust, and Unknown Trusts 1–10) must be dismissed because Plaintiffs do not have standing to assert such claims and because the Amended Complaint otherwise does not state a valid claim for relief under any of these counts.  In addition, the Rohn Defendants ask the Court to dismiss "any factual allegation or claim that Rohn breached a duty running to [the Law Office] as an entity, or based on any transaction or occurrence relating to the alleged 'transfer' of assets from [the Law Office] that occurred after December 1, 2008, because Cameron lacks standing to assert these claims." (Defs.' Br. 2).  Defendants next argue that count eleven (Determination of Distributional Interest claim under 13 V.I.C. § 1702 against Rohn and Rohn P.C.) must be dismissed because it is barred by the statute of limitations.  Lastly, the Defendants argue in their reply brief that this Court should refuse to exercise supplemental jurisdiction over the Plaintiffs' territorial-law claims or, alternatively, certify the issues presented in this motion to the Virgin Islands Supreme Court.

### a.  Standing

Standing is a jurisdictional pre-requisite to filing suit in federal court.  The burden of establishing standing therefore falls onto the party invoking federal jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In order to establish standing, a party must

show three things: (1) an "injury in fact," which is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of"; and (3) the injury must be likely to be redressed by a favorable decision. *Id.* at 560–61; *see also Kress v. New Jersey*, No. 11-1512, 2011 U.S. App. LEXIS 25426, at *7 (3d Cir. Dec. 21, 2011). Plaintiffs must show standing under each cause of action. *See Allen v. Wright*, 468 U.S. 737, 752 (1984); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross.").

In this case, the Rohn Defendants argue that the harm complained of in counts two, three, six, seven, nine, and ten ran to the Law Office itself and not to either of the Plaintiffs. The injury ran to the Plaintiffs only indirectly, and as such, Plaintiffs suffered no "injury in fact." Defendants argue, therefore, that Plaintiffs would have to bring these claims as derivative claims, which under Virgin Islands law they are not permitted to do.

Pursuant to the Virgin Islands Uniform Limited Liability Company Act (ULLCA), 13 V.I.C. § 1101, *et seq.*, under which the Law Office was formed, "[a] limited liability company is a legal entity distinct from its members." 13 V.I.C. § 1201. "A member is not a co-owner of, and has no transferable interest in, property of a limited liability company." 13 V.I.C. § 1501. A derivative action, however, may be brought by a member of an LLC in order to protect the LLC's property if the controlling member or members refuse to do so. 13 V.I.C. § 2101. In order to have standing to assert a derivative action, "the plaintiff must be a member of the [LLC] when the action is commenced, and: (1) must have been a member at the time of the transaction of which the plaintiff complains; or (2) the plaintiff's status as a member must have devolved upon the plaintiff by operation of law or pursuant to the terms of the operating agreement from a

person who was a member at the time of the transaction." 13 V.I.C. § 2102. Plaintiffs have conceded that they are not attempting to maintain a derivative right of action on behalf of the Law Office. (Pls.' Br. 3). Rather, Plaintiffs argue that there is no requirement mandating that they fashion their claims in such a way.

Although a member of an LLC is not a co-owner of the LLC's property, under Virgin Islands law, members are allowed to bring suit against another member in certain situations. The ULLCA states that "[a] member may maintain an action against . . . another member [of the LLC] for legal or equitable relief, with or without an accounting as to the company's business, to enforce: (1) the member's rights under the operating agreement; (2) the member's rights under this chapter [i.e., arising under the ULLCA]; and (3) the rights and otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company." 13 V.I.C. § 1410(a). Ultimately, the Court's decision on this pending motion will revolve around its interpretation of this statute and its relationship with other statutory provisions.

As always, interpretation of a statute begins with the statutory text. *See BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91(2006) (citing *Cent. Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 173 (1994)). Further, because no court in the Virgin Islands or elsewhere has fully analyzed the meaning of § 1410, the Court will look to the advisory committee notes and other analogous precedent.

A plain reading of subsection (a)(1) and (a)(2) of § 1410 permits both statutory rights under the ULLCA and rights arising under the Operating Agreement to be enforced directly by one member of an LLC against another. *See* 13 V.I.C. § 1410(a). The committee notes promulgated along with the ULLCA by the Uniform Law Commission provide that "[a] member

pursues only that member's claim against the company or another member under [§ 1410]," and that other sections of the ULLCA "govern[] a member's derivative pursuit of a claim on behalf of the company." UNIFORM LIMITED LIABILITY COMPANY ACT, § 410, cmt., 6A U.L.A. 560–650 (2003). Thus, this right to bring a direct action is independent of any right that a member may have under 13 V.I.C. § 2101 to bring a derivative action on behalf of the LLC.

Subsection (a)(3), however, is more ambiguous. The advisory committee notes counsel that "[a] member may recover against the company and the other members under subsection (a)(3) for personal injuries or damage to the member's property caused by another member." UNIFORM LIMITED LIABILITY COMPANY ACT, § 410, cmt., 6A U.L.A. 560–650 (2003). Similarly, the committee notes to the revised ULLCA—which retained much of the operative language of subsection (a)(3)—advise that "[t]he last phrase of this subsection ('or arising independently . . .') . . . does not create any new rights, obligations, or remedies, and is included merely to emphasize that a person's membership in an LLC does not preclude the person from enforcing rights existing 'independently of the membership relationship.'" Thus, the Court reads § 1410(a)(3) to protect independent causes of action that are separate from rights protected under the ULLCA or an operating agreement, but it does not create any further substantive cause of action by one member against another.

With this basic framework in mind, the issue for this Court to decide is whether Plaintiffs' suffered an injury in fact or whether only the LLC had an injury in fact under each asserted claim.

### i. *Breach of Fiduciary Duty (Count six)*

In regard to Plaintiffs' claims under count six for breach of fiduciary duty, Defendants argue that § 1410 only permits suit by one "member" against another "member," and that by

operation of Plaintiffs' withdrawal in January 2009, this provision is no longer applicable as a matter of law.

The fiduciary duties owed by one member of an LLC to another member of an LLC under Virgin Islands law is governed by 13 V.I.C. § 1409. Section 1409 provides in relevant part:

> (b) A member's duty of loyalty to a member-managed company and its other members is limited to the following:
> (1) to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;
> (2) to refrain from dealing with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company;
> . . .
> (c) A member's duty of care to a member-managed company and its other members in the conduct of and winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

13 V.I.C. § 1409(b)–(c). These obligations are enforceable in a direct suit by one member of an LLC against another member. *See* 13 V.I.C. § 1410(a)(2); *see also Stair v. Calhoun*, No. 07-3906, 2009 U.S. Dist. LEXIS 23630, at *3738 (E.D.N.Y. Mar. 23, 2009) (permitting suit by one member of an LLC in his individual capacity against other members of the LLC in their individual capacities to go forward under 13 V.I.C. § 1410 alleging a breach of fiduciary duties).

Defendants argue in their reply brief that because Plaintiffs are no longer "members" by operation of their dissociation, they cannot maintain an action under § 1410(a). As Defendants point out, however, the Court's construction of the ULLCA must be based on the statutory scheme as a whole and not by reference only to discrete sections. *See, e.g., In re Phila. Newspapers, LLC*, 599 F.3d 298, 328 (3d Cir. 2010) (Ambro, J., dissenting). The ULLCA

9

specifically provides that a member's fiduciary obligations continue even after dissociation of that member with regard to events occurring prior to dissociation. 13 V.I.C. § 1603(b)(2)–(3). With this in mind, the Court believes that 13 V.I.C. § 1603(b)(3) allows a dissociated member to bring suit under § 1410(a) against other members of the LLC for events that occurred during this time frame, even after dissociation by that member. In essence, § 1603 places Plaintiffs in the position of a "member" for purposes of § 1410, even though they may no longer actually be one. Plaintiffs were "members" of the LLC when their cause of action accrued and therefore they retain their status as members for events occurring prior to dissociation. *Cf.* 13 V.I.C. 1503(c) (providing that the transferor of a distributional interest in an LLC is not released from liability upon dissociation). In its Opinion of October 12, 2011, the Court held that "the Withdrawal of Membership did not constitute a waiver of any of Plaintiffs' rights to enforce the agreement between the parties." (Op. of Oct. 12, 2011, at 12). Similarly, Plaintiffs have not waived any cause of action to enforce rights obtained through operation of law—i.e., rights arising directly under the ULLCA. As such, Plaintiffs have properly pled standing under count six of the Amended Complaint.

### ii. *Conversion (Count seven)*

Count seven of the Amended Complaint raises a claim of conversion against Rohn, Rohn P.C., Rohn & Carpenter, and Carpenter. This claim appears to be based on the transfer of cases from the Law Office to Rohn's new law firm, Rohn & Carpenter. (*See* Am. Compl. ¶¶ 175–79). Although Plaintiffs claim to have had an interest in these transferred cases, (*see id.* ¶ 176), this is both directly contradicted in other parts of the Amended Complaint, (*see id.* ¶¶ 48, 59, 61, 177), and it is in the nature of a legal conclusion that this Court is free to ignore, *see Fowler v. UPMC Shadyside*, 578 F.3d at 210–11. Rather, the property that is alleged to have been converted was

10

owned by the Law Office. (*See id.* ¶¶ 48, 59, 61, 177). Under the laws of the Virgin Islands, Plaintiffs had no ownership rights to this property. *See* 13 V.I.C. § 1501 ("A member is not a co-owner of, and has no transferable interest in, property of a limited liability company.").

Unlike a claim for breach of fiduciary duty, a claim for conversion does not arise under the ULLCA, nor does it arise under the Operating Agreement. Rather, such a claim arises under the common law. As explained above, 13 V.I.C. § 1410(a)(3) protects a cause of action that one member may have against another at common law, but it does not create any further causes of action by one member of an LLC against another. This Court must therefore determine whether count six is derivative in nature or whether it can be brought as a direct suit. The general rule is that "whether an action is derivative or direct depends on whether the harm alleged by the plaintiff is independent of harm suffered by the [LLC] itself." *HB General Corp. v. Manchester Partners*, 95 F.3d 1185, 1194 (3d Cir. 1996) (citations omitted). The Court has no problem in concluding that the harm alleged in count seven ran primarily to the LLC; it ran to the Plaintiffs only indirectly. Therefore, because the property that is alleged to have been illegally converted was owned by the Law Office and not by the Plaintiffs, this claim must have been brought as a derivative claim. Thus, Plaintiffs have no standing to bring this claim and it must be dismissed.

### iii. *Unjust Enrichment (Count nine)*

Count nine of the Amended Complaint alleges that "[i]n failing to properly account for the fee income due and owing to Rohn and Cameron, LLC, Defendants Rohn, Rohn, P.C., Rohn and Carpenter, LLC and Carpenter unjustly enriched themselves." (Am. Compl. ¶ 191). To prove a claim for unjust enrichment, a plaintiff has the burden of showing: (1) that the defendant has been enriched; (2) that such enrichment was at the expense of the plaintiff; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money

to the plaintiff. *Martin v. Martin*, 54 V.I. 379, 393–94 (V.I. 2010). In this case, it is clear from the face of the Amended Complaint that the allegation is that the Rohn Defendants were enriched at the expense of the Law Office, not the Plaintiffs. To the extent that any enrichment was at the expense of the Plaintiffs, this occurred only indirectly  Therefore, this claim could only be brought as a derivative suit and it must be dismissed.

### iv. *Fraudulent Conveyance/Constructive Trust (Count ten)*

Count ten of the Amended Complaint raises claims against numerous Defendants for fraudulent conveyance under the Virgin Islands Uniform Fraudulent Conveyances Act (UFCA), 28 V.I.C. § 201, *et seq.*  Specifically, Plaintiffs have brought this claim under 28 V.I.C. § 210, which provides a cause of action to a creditor who has an un-matured claim against the debtor. 28 V.I.C. § 210. Section 210 states:

> Where a conveyance made or obligation incurred is fraudulent as to *a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured,* and the court may, (a) Restrain the defendant from disposing of his property, (b) Appoint a receiver to take charge of the property, (c) Set aside the conveyance or annul the obligation, or (d) Make any order which the circumstances of the case may require.

28 V.I.C. § 210 (emphasis added). A creditor whose claim has matured may bring suit against "any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser." 28 V.I.C. § 209(1). Thus, the party or parties to whom a debtor's assets are fraudulently conveyed are appropriately named as defendants.

Plaintiffs' theory under this count appears to be that they are un-matured creditors of the Law Office, presumably because they have not yet received the fair value for their distributional interest. As such, this is not, nor can it be fashioned as, a derivative claim; it is completely

separate from a suit by Plaintiffs in their role as members of the Law Office. Section 1410(a)(3)

specifically preserves these types of claims. *See supra.* The Court does not reach the question of

whether this claim otherwise validly pleads a cause of action because this argument was not

adequately addressed. *See infra* Part III.c. The Court concludes only that Plaintiffs have validly

pled the issue of standing based on the allegation that they are in the position of a creditor

bringing suit against a party to whom the assets of the debtor were fraudulently conveyed.

### v.   *RICO Claims (Counts two)*

Count two of the Amended Complaint raises a claim under the Racketeering Influenced

and Corrupt Organization Act (RICO), 18 U.S.C. § 1961, *et seq.* In an earlier motion to dismiss

in this case, Defendants similarly argued that Plaintiffs do not have standing to assert their RICO

claims. (*See* Op. of Oct. 12, 2011, at 12). Specifically, Defendants argued that Plaintiffs had no

vested interest in the property of the Law Office because no written operating agreement was

signed by the parties and because Plaintiffs had withdrawn from membership. (*Id.*). The Court

rejected these arguments. (*Id.*). Defendants have now renewed this argument by taking a

different approach; they now argue that Plaintiffs cannot establish standing because their RICO

claim must be brought as a derivative claim. This argument, however, must also be rejected.

At the heart of Defendants' argument is the extent of injury to the Plaintiff, if any, and

what caused those injuries. Plaintiffs allege three separate injuries as the basis for this claim:

"Plaintiffs have been injured in that [1] Plaintiffs' capital interest in Rohn and Cameron, LLC

was significantly reduced, [2] the assets of Rohn and Cameron, LLC were intentionally

eviscerated, and [3] Plaintiff Cameron did not receive the agreed upon salaries for years 2007

($400,000) and 2008 ($260,000)." (Am. Compl. ¶ 145).

13

The federal RICO statute provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of the statute . . . ." 18 U.S.C. § 1964(c). The United States Court of Appeals for the Third Circuit has stated that the RICO statute is to be broadly read. *See Tabas v. Tabas*, 47 F.3d 1280, 1291 (3d Cir. 1995); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008). Courts should be cautious, however, because § 1964 does "retain[] restrictive significance." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

This case is unique in that it stands at the intersection of two separate lines of cases dealing with standing in the context of RICO actions based on the interpretation of 18 U.S.C. § 1964(c). *See generally Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000). The first line of cases deals with whether a plaintiff has suffered an "injury in his business or property." The second line of cases deal with whether plaintiff's injury was "by reason of" the defendant's RICO violations—i.e., can the defendant's actions reasonably be considered the "proximate cause" of the plaintiff's injury? *See Hemi Group, LLC v. City of New York*, --- U.S. ---, 130 S. Ct. 983, 988 (2010) (recognizing that these are "two distinct issues").

Although the Third Circuit has never directly ruled on the question presented by the Rohn Defendants, it has stated in passing that "[f]ederal courts that have considered the question in shareholder suits all have held that shareholders lack standing to assert RICO claims where their injuries are not direct and distinct from any injury sustained by the corporation and shareholders generally." *In re Sunrise Sec. Litig.*, 916 F.2d 874, 880 (3d Cir. 1990) (collecting cases). This is because "[t]here is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006).

14

"[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483 (quoting *Steele v. Hosp Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). However, "it is appropriate to look to state law for guidance in deciding whether plaintiffs have stated a nonderivative claim, rather than to fashion federal common law in this area." *In re Sunrise Sec. Litig.*, 916 F.2d at 881; *see also Bridge*, 553 U.S. at 660 ("We have repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe." (collecting cases)). An important distinction exists in some states, as well as in the Virgin Islands, between derivative suits brought by the shareholders of a corporation and those brought by members of an LLC. This is because an LLC is "a relatively new unincorporated business entity possessing some characteristics of both a corporation and a partnership." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

As explained above, the territorial law of the Virgin Islands treats breaches of fiduciary duties and breaches of LLC operating agreements by members of an LLC as harms directly against other members of that LLC. *See supra* Part III.a. Because of this, the Virgin Islands ULLCA permits direct suits by one member of an LLC against other members of that LLC. *See* 13 V.I.C. § 1410(a). Moreover, a suit by an ex-member is permissible against a current member for acts occurring during the period in which the ex-member still maintained membership in the LLC. *See supra* Part III.a.i.

There are at least two injuries alleged in the RICO count of the Amended Complaint that under Virgin Islands territorial law are considered direct harms against the Plaintiffs. First, Plaintiffs suffered direct harm as a result of the Rohn Defendants' breach of their fiduciary duties, which thereby diminished Plaintiffs' capital interest in the Law Office. *See* 13 V.I.C. §

15

1410(a)(2). Although this is generally considered derivative in nature, under the ULLCA as adopted in the Virgin Islands, such suits may be brought directly by one member of an LLC against another.[3] *Id.* Second, Plaintiffs suffered a direct harm as a result of the Defendants' breach of the operating agreement, *see* 13 V.I.C. § 1410(a)(1), which in this case included a term that provided for payment of a salary to Cameron, (Am. Compl. ¶¶ 50–57).[4]

"[L]ook[ing] to [territorial] law for guidance," as the Third Circuit has required, Plaintiffs' have sufficiently pled that they have been "injured in [their] business or property." An illustrative case is *Grafman v. Century Broad. Corp.*, 743 F. Supp. 544 (N.D. Ill. 1990). There, the court permitted RICO claims to proceed where the shareholder plaintiff loaned the corporation money that was not repaid on account of the defendant's misdeeds and on the basis of an alleged breach of a compensation agreement. *Id.* at 549.

In addition to being "injured in his business or property," however, this injury must also be "by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In recent years, the United States Supreme Court and lower federal courts have expanded upon the meaning of the "by reason of" language in the civil RICO statute.

In 1992, the Supreme Court for the first time held that in order to establish a claim under § 1964(c), "[p]roximate cause is . . . required." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The term "proximate cause" in this instance, however, is not used in the same sense typically associated with common law torts. *See Bridge*, 553 U.S. at 655 (rejecting

---

[3] This is in line with the observations of at least one popular treatise, which has noted that "[i]t has been suggested that a different rule—permitting individual actions by shareholders—might apply in the context of close corporations." GREGORY P. JOSEPH, CIVIL RICO: A DEFINITIVE GUIDE 44 (3d ed. 2010). In these situations, "[s]hareholders in close corporations may in all events be able to establish personal business injury as a result of their association and identification with the entity." *Id.* (citing *Siddle v. Crantz*, 650 F. Supp. 2d 773 (M.D. Tenn. 2009)). The Court, however, need not decide that question here, especially because bright-line rules are avoided in this area. *See Bridge*, 530 U.S. at 654.

[4] Plaintiffs' third alleged injury—i.e., that the assets of the Law Office were intentionally eviscerated—was not an injury to the Plaintiffs but was instead an injury only to the Law Office. *See supra*. Therefore, Plaintiffs' do not have standing under RICO on this basis.

16

argument "that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim"). In the context of RICO, "proximate cause" requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Analogizing the RICO statute to the Clayton Antitrust Act, the Court in *Holmes* reasoned that such directness is required for several reasons: (1) "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) "recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries"; and (3) the "directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id.* at 269; *see also Bridge*, 553 U.S. at 654–55. The attenuation from harm in *Holmes* resulted because "the alleged violations [of RICO] were linked to the asserted harms only through [a third parties'] inability to meet their financial obligations." *Anza*, 547 U.S. at 458.

In later cases, the Supreme Court has referred to its "proximate cause" analysis in *Holmes* as establishing a "requirement of directness." *Id.* at 457. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.* at 461. In *Anza*, for example, the Court recognized that the risk of duplicative recoveries was remote, but the other two factors underpinning the "proximate cause" requirement as elucidated in *Holmes*—i.e., the difficultly in apportioning fault for a particular injury and the other available parties able to vindicate the wrong—sufficiently attenuated the plaintiff's injuries from the alleged RICO violations. *Id.* at 458–61. In the

17

Court's words, "The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Id.* at 460 (citing *Holmes*, 503 U.S. at 269–70).

The definition of "proximate cause" was defined even further by the Court in *Bridge*. There, the Court determined that a suit by the plaintiff against his competitors in tax lien auctions satisfied the "proximate cause" requirement even though it was the State that directly relied on the alleged fraud in the defendants' bid-rigging scheme. The plaintiffs alleged injury in *Bridge* was the loss of valuable liens, which "was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves." *Id.* at 658. In other words, it was a zero-sum game—there was a winner and loser, and the loser had standing to sue. Furthermore, the policy justifications for the Court's earlier opinion in *Holmes* were absent from the facts of this case: "there [were] no independent factors that [could] account for the [plaintiff's] injuries, there [was] no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim [was] better situated to sue." *Id.* at 658. This made clear "that proximate cause is generally not amenable to bright-line rules." *Id.* at 659.

The most recent Supreme Court case dealing with the issue of "proximate cause" in the context of a civil RICO claim is *Hemi Group, LLC v. City of New York*, --- U.S. ---, 130 S. Ct. 983 (2010) (plurality opinion), which resulted in a 4-1-3 split among the Court. In *Hemi Group*, the Court held that the plaintiff did not satisfy the "proximate cause" requirement of RICO where the City of New York filed suit against an internet-based tobacco distributor who failed to disclose its customers as required under the Jenkins Act, a New York State statute, and as a result, the City was unable to collect taxes from these customers. "Put simply, Hemi's obligation was to file the Jenkins Act reports with the State, not the City, and the City's harm was directly

18

caused by the customers, not Hemi." *Id.* at 990. Under these circumstances, the State of New York, would have a greater incentive to enforce Hemi's obligations, if any, under the Jenkins Act. *Id.* The plurality, in which four justices joined, specifically rejected the argument that "proximate cause" in this context relied on foreseeability. *Id.* at 991. Instead, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm. Indeed, *Anza* and *Holmes* never even mention the concept of foreseeability." *Id.* A three justice minority, on the other hand, would have held that the "proximate cause" requirement was satisfied because the harm caused to the City was a foreseeable and natural consequence—perhaps even an intended consequence—of the plaintiff's acts. *Id.* at 997–98 (Breyer, J., dissenting).[5]

The Third Circuit has yet to evaluate the current outlay of RICO "proximate cause" jurisprudence. This Court, however, reads the above-discussed cases to mean that three factors are considered in determining whether proximate cause is satisfied: (1) whether independent variables can account for the plaintiff's injury; (2) the difficulties, if any, in apportioning damages and the risk of duplicative recoveries; and (3) whether a more directly injured party can better vindicate the law or is otherwise in a better position to bring suit. *See, e.g., Longmont United Hosp. v. St. Barnabas Corp.*, 305 Fed. Appx. 892, 896 (3d Cir. 2009) (using these three factors to explain why plaintiffs did not satisfy "proximate cause" standard but without discussing factors in-depth).[6] These are the basis on which to evaluate the "directness" of

---

[5] Of the two remaining Justices, Justice Ginsburg concurred in part but specifically did not join the plurality's opinion in regards to the proximate cause issue, *see id.* at 994–95 (Ginsburg, J., dissenting), and Justice Sotomayor did not take part in consideration of the case.

[6] In *Anderson v. Ayling*, 396 F.3d 265, 270–71 (3d Cir. 2005), the Third Circuit relied on its earlier decision in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999), and used six factors to evaluate whether the plaintiff had properly pled "proximate causation." These factors included:
> (1) the causal connection between defendant's wrongdoing and plaintiff's harm; (2) the specific intent of defendant to harm plaintiff; (3) the nature of plaintiff's alleged injury . . .; (4) "the directness or indirectness of the asserted injury"; (5) whether the "damages claim is . . . highly

plaintiff's injury stemming from the defendant's predicate acts.[7] This balancing is inherently

fact sensitive and must be done on a case-by-case basis. *See Bridge*, 530 U.S. at 659.

Defendants in this case argue that a member of an LLC could never have standing to

bring suit against another member of an LLC under the civil RICO statute. The Court refuses to

adopt such a bright-line approach. *See, e.g., Maiz v. Virani*, 253 F.3d 641, 655 (11th Cir. 2001)

("[S]imply because the plaintiff is a shareholder of a corporation, it does not necessarily follow

that he lacks standing to seek RICO damages in his own right. There is no bright-line rule for

determining when an individual who is also a corporate shareholder sues under § 1964 to recover

for a RICO violation that affects both the individual and the corporation. The inquiry is

inherently fact-specific."). Proximate cause, after all, "is a flexible concept that does not lend

itself to 'a black letter rule that will dictate the result in every case.'" *Bridge*, 530 U.S. at 654.

Rather, "proximate cause" in this context is a generic label for the "judicial tools used to limit a

person's responsibility for the consequences of that person's own acts." *Holmes*, 503 U.S. at

268.

On the unique facts of this case, the Court has concluded that Plaintiffs have successfully

alleged standing to bring a claim under RICO. The facts of this case are most analogous to the

Supreme Court's decision in *Bridge*. To begin, the predicate acts complained of in this case are

---

speculative"; and (6) "keeping the scope of complex [RICO] trials within judicially manageable
limits," i.e., "avoiding either the risk of duplicate recoveries on the one hand, or the danger of
complex apportionment of damages on the other."
*Anderson*, 396 F.3d at 270 (quoting *Steamfitters*, 171 F.3d at 924); *see also City of Phila. v. Beretta U.S.A.
Corp.*, 277 F.3d 415, 423 (3d Cir. 2002) ("remoteness" is analyzed through these six factors). This case,
however, was a pre-*Anza* decision and much of, if not all of, this test has been abrogated by later decisions
or subsumed within the more narrow three-factor analysis found in Supreme Courts cases such as *Bridges*.
*See generally Longmont United Hosp.*, 305 F. App'x at 896 (utilizing only the three *Holmes* factors).
[7] Some courts have construed "directness" as being the first factor in this proximate cause analysis. *See, e.g., Lester
v. Percudani*, No. 01-1182, 2008 U.S. Dist. LEXIS 91202, at *47, n.25 (M.D. Pa. Oct. 24, 2008); *see also
Steamfitters*, 171 F.3d at 932–34 (pre-*Anza* case). This Court, however, does not agree with this analysis. *See
Bridge*, 530 U.S. at 654 (characterizing the "direct-relation requirement" as separate from the three considerations
highlighted by the Court in *Holmes*).

the electronic wire transfers of money that occurred in December 2007. (Am. Compl. ¶ 139). This had a direct effect on Plaintiffs' capital interest in the Law Office.

There are several reasons for this Court's conclusion. First, no independent variables can account for Plaintiffs' loss. Unlike in *Anza* or *Holmes*, the actions of Defendants in this case are in no way related to business activities that can be accounted for by wholly-innocent conduct inherent in competition for customers. Here, Defendants are alleged to be nothing more than white-collar thieves—taking assets from one entity and placing it with others. Second, assuming that Plaintiffs' well-pled factual allegations are true, there is no difficulty in apportioning liability to the Plaintiffs—they would be entitled to 30% of the assets wrongfully conveyed to the other Rohn-controlled entities. The damages here are substantially concrete; Plaintiffs' have identified both the percentage that they are owed and the dollar amounts of the unlawfully transferred assets. *See Clark v. Conahan*, 737 F. Supp. 2d 239, 267 (M.D. Pa. 2010). Moreover, there is no indication that multiple recovery would occur in this case. Third, there is no better suited party—or for that matter, any party—able to hold Defendants accountable in this case. As this Court recently noted in another Opinion in this case, and as Defendants argued quite strenuously in briefing that motion, the Law Office in this case does not have an independent interest apart from its members' interests in seeking to vindicate its rights. (Op. of Jan. 30, 2012, at 7). Therefore, all three policy factors identified by the Supreme Court weigh in favor of the Plaintiff.

There are additional considerations that shade this Court's determination. For example, the fact that the Law Office is a closely-held entity with only two members counsels in favor of the Plaintiffs. As was the case in *Bridge*, the transfer of assets in this case was a zero-sum game. Although the LLC was the directly injured party in a technical sense, taking assets out of the LLC benefited one member to the direct detriment of the other remaining member. Furthermore,

as discussed above, Virgin Islands law permits one member of an LLC to bring suit against another member for acts of that member which violate the ULLCA or an operating agreement. The Supreme Court has "repeatedly refused to adopt . . . constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe." *Bridge*, 530 U.S. at 660. Although the requirement of "proximate cause" is based in federal law, reference to state law is permitted in determining what constitutes "proximate cause" or a "direct" injury on the facts of each case.[8] *Cf. In re Sunrise Sec. Litig.*, 916 F.2d at 881 (court should reference state law to determine what constitutes an "injury"); *see also At the Airport v. ISATA, LLC*, 438 F. Supp.2d 55, 62–64 (E.D.N.Y. 2006) (referring to state LLC law in determining whether plaintiff's injury was "direct" as defined under RICO).

As should be clear from the discussion above, the law in this area is in flux. The Court, however, has found at least one case in which a member of an LLC was permitted to bring a civil RICO action against another member of an LLC. In *Stooksbury v. Ross*, No. 09-498, 2011 U.S. Dist. LEXIS 48552, at *31–34 (E.D. Tenn. Apr. 29, 2011), the court—without discussing the three *Holmes* factors—held that the plaintiffs had sufficiently pled "proximate cause" and therefore had standing in a case with facts not dissimilar to the case at bar. There, the plaintiff was a 25% co-owner of an LLC along with two other members (one also owned a 25% interest and the other owned a controlling 50% interest). The plaintiff alleged that the controlling member of the LLC diverted LLC funds "for the personal benefit of the [defendants] and of their relatives, associates, and agents; and that funds were diverted into other accounts to launch new projects." *Id.* at *6. The injuries alleged by the plaintiffs included, among other things, "lost

---

[8] Plaintiffs in this case have also brought suit against Defendants in their capacity as creditors to the Law Office. *See supra* Part III.a.iv. Although this issue need not be decided, suing as a creditor may also serve as a basis for standing under RICO. *See, e.g.*, *Beck v. Prupis*, 162 F.3d 1090, 1096 n.10 (11th Cir. 2000) (stating that because the fraud was directed at plaintiff as a creditor to the organization he had sufficiently pled standing).

income from the sale of properties . . . which were not reported or disclosed to [plaintiff] . . .; lost funds and profits which were hidden from [plaintiff] . . .; lost funds and profits which were diverted by [defendants'] for said individuals' own benefit or for use in other projects owned and controlled by [defendants]; lost profits on account of the insider sham transactions referenced above; and losses on account of the downward spiral of property values caused by the conduct referenced above." *Id.* at *48. These are similar to the harms alleged by Plaintiff in this case.[9]

For all of these reasons, the Court believes that on the unique facts of this case Plaintiffs have standing to bring their civil RICO claims.

### vi. CICO Claim (Count three)

Count three of the Amended Complaint raises a claim under the Virgin Island's version of the federal RICO statute, the Criminally Influenced and Corrupt Organizations Act (CICO), 14 V.I.C. § 600, *et seq.* The injuries alleged under Plaintiffs' CICO claims are identical to those arising under Plaintiffs' RICO claims.[10] Defendants contend that Plaintiffs must also bring this claim as a derivative suit. This argument, however, presents a much easier question for the

---

[9] The only other case that the Court has been able to find dealing with a RICO claim by one member of an LLC against another member of the LLC is a pre-*Bridge* case from the Eastern District of New York. In that case, *At the Airport v. ISATA, LLC*, the court, similar to the court in *Stooksbury*, failed to discuss the three *Holmes* factors. The *At the Airport* court concluded, on the basis of a Second Circuit standard used to determine proximate cause and state LLC law, that the plaintiff did not have standing to bring his suit. *At the Airport*, 438 F. Supp.2d at 62–64. The Second Circuit standard, which the court utilized, had two prongs: first, the court asked whether the plaintiff's injuries were the result of the defendant's racketeering activities; and second, the court asked "whether the defendants' acts were a substantial factor in the sequence of responsible causation, and whether the plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence." *Id.* at 62 (quoting *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003)) (internal quotation marks omitted). This test, however, has never been utilized by courts in the Third Circuit, and as discussed above, it does not comport with this Court's reading of the *Holmes* line of cases. *See DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 650–54 (S.D.N.Y. 2011) (calling into question the viability of this standard following *Hemi Group*). There is further reason to distinguish this case. Unlike the ULLCA as adopted in the Virgin Islands, New York state LLC law does not specifically permit a direct cause of action by one member against another. The *At the Airport* court did recognize, however, that the fact that a plaintiff cannot bring a derivative suit, as in this case, "presumes that the directly injured third party will have the ability to vindicate its claims." *At the Airport*, 438 F. Supp. 2d at 64 (citing *Anza*, 547 U.S. at 460).

[10] Paragraph 158 of the Amended Complaint, the paragraph describing the harm caused by Defendants' alleged CICO violation, is nearly identical to paragraph 145: "Plaintiffs have been injured in their business and property in that Plaintiff Cameron P.C.'s capital interest in Rohn and Cameron, LLC was significantly reduced, Rohn and Cameron, LLC's assets were eviscerated, and Plaintiff Cameron did not receive the agreed upon salaries for the years 2007 ($400,000) and 2008 ($260,000)." (Am. Compl. ¶ 158).

Court to decide than the analysis of Defendant's RICO arguments, and the Court concludes that the argument is without merit.

Similar to the federal RICO statute, the Virgin Islands CICO statute provides civil remedies for aggrieved parties. Under 14 V.I.C. § 607, "Any person, *directly or indirectly,* injured by conduct constituting a violation by any person of the provisions of [CICO] shall, in addition to any other relief under this section, have a cause of action. . . . *Damages under this section shall __not__ be limited to . . . distinct injury.*" 14 V.I.C. § 607 (emphasis added). Thus, under the plain language of the act, Plaintiffs have standing to bring this action. There is no prohibition against minority members of an LLC bringing suit against the controlling owners of that entity, even for claims directly harming the LLC. Therefore, this claim under CICO need not be brought as a derivative action, and Plaintiffs have standing to pursue this claim.

### b.  Distributional Interest under 13 V.I.C. § 1702 (Count eleven)

Defendants next argue that Plaintiffs' eleventh cause of action—a claim under 13 V.I.C. § 1702 seeking a determination of Plaintiffs' distributional interest—is barred by the statute of limitations. Generally speaking, a motion for judgment on the pleadings under Rule 12(c) based on the assertion of an affirmative defense is disfavored in the federal courts. On such a motion, however, a district court may take into consideration an affirmative defense if such a defense "presents an insuperable barrier to recovery by the plaintiff." *Flight Sys. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) (citing *Cont'l Collieries v. Shober*, 130 F.2d 631, 635–36 (3d Cir. 1942)); *see also Fullman v. Pa. Dep't of Corr.*, 265 F. App'x 44, 45–46 (3d Cir. 2008) (citations omitted) (applying Rule 12(b)(6) standard in the context of a motion under Rule 12(c)). This defect in the plaintiff's claim must "appear on the face of the pleading." *Cont'l Collieries*, 130 F.2d at 635–36; *see also Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005)

24

(stating that this requirement is "critical"); *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). When a motion seeking dismissal of a complaint is based on an affirmative defense, a fact that is left out of the complaint but that is necessary proof required to prevail on the basis of that affirmative defense will be fatal to the defendant's motion. *See, e.g., Dragotta v. W. View Sav. Bank*, 395 F. App'x 828, 831 (3d. Cir. 2010).

Defendants argue that it is uncontested that Plaintiffs withdrew from the Law Office on January 1, 2009 as a result of the signed Notice of Member Withdrawal [docket # 41-2]. Usually, this Notice of Member Withdrawal could not be considered by the Court because it is outside of the pleadings. *See, e.g., Cerome v. Moshannon Valley Corr. Ctr.*, No. 09-2070, 2010 U.S. App. LEXIS 24938, at *9 (3d Cir. Dec. 7, 2010); Fed. R. Civ. P. 12(d). However, "an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [for judgment on the pleadings] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal quotation marks omitted). Plaintiffs specifically relied upon this notice in the Amended Complaint at paragraph 200. (Am. Compl. ¶ 200) ("Plaintiffs provided notice to Defendant Rohn and Rohn, P.C. of their intent to dissociate from Rohn and Cameron, LLC . . . ."). Therefore, consideration of this document is appropriate.

The ULLCA provides that upon dissociation from an LLC, the LLC must purchase the dissociating member's distributional interest. 13 V.I.C. § 1701(a). If an agreement to purchase the dissociating members distributional interest is not consummated within 120 days of the dissociation, "the dissociated member, within another 120 days, may commence a proceeding [under § 1702] against the limited liability company to enforce the purchase." 13 V.I.C. § 1701(d).

Plaintiffs contend that the statute of limitations has not started to run in this case because of the relationship between 13 V.I.C. §§ 1701 and 1801. This argument is both confusing and unavailing. Under § 1701, an LLC must "purchase a distributional interest of a member of an at-will company for its fair value . . . *if the member's dissociation does not result in a dissolution and winding up of the company's business* under section 1801." 13 V.I.C. § 1701(a)(1) (emphasis added). As Plaintiffs recognize, however, their dissociation from the Law Office did not result in the dissolution or winding up of the Law Office.

The Court reads the relationship between § 1701 and § 1801 as meaning that a dissociated member in the situation of the Plaintiffs has two options: (1) valuation and forced purchase of a distributional interest if the LLC continues as an entity after dissociation; or (2) receiving their distributional interest upon dissolution and winding up of the company under 13 V.I.C. § 1806(b) or 13 V.I.C. § 1503(e)(2). Under either course of action, the Plaintiffs would be provided a right to recover their distributional interest. *Compare* 13 V.I.C. § 1702 (providing that a court determine fair value of the interest, specify the terms of the purchase, and require dissociated member to deliver an assignment of the interest) *with* 13 V.I.C. § 1806(b) ("Each member is entitled to a distribution upon the winding up of the limited liability company's business consisting of a return of all contributions which have not previously been returned and a distribution of any remainder in equal shares."). Then, if the remaining members of the LLC attempt to avoid payment in any way (e.g., by failing to follow through on the purchase or by not properly winding up), a party may petition for a judicial decree of dissolution and winding up, as well as judicial supervision of the winding up process. *See* 13 V.I.C. § 1702(c) (permitting judicial dissolution if remaining members refuse to go through with the purchase); *see also* 13

26

V.I.C. § 1801(4)–(5) (permitting transferee[11] to petition for judicial dissolution "at any time" if company was at-will at the time of dissociation). If a dissociating member must resort to this, they are still able to recover their distributional share. See, e.g., 13 V.I.C. § 1503(e)(2) ("A transferee who does not become a member is entitled to receive, upon dissolution and winding up of a limited liability company's business, (i) in accordance with the transfer, the net amount otherwise distributable to the transferor; [and] (ii) a statement of account . . ."); see also 13 V.I.C. § 1806.

Based upon this reading of the ULLCA, Plaintiffs' claim under count eleven must be dismissed. The dissociation of Plaintiff on January 1, 2009 did not cause the automatic dissolution and winding up of the Law Office under 13 V.I.C. § 1801(1)–(3). Therefore, the 240 day period in which Plaintiffs were required to file suit started to run immediately upon dissociation. The original Complaint in this case was filed on December 31, 2010—well after 240 days following Plaintiffs' withdrawal. Thus, a claim for the valuation and forced purchase of Plaintiffs' distributional interest under §§ 1701–1702 is barred by the statute of limitations.

### c. Defendants' Remaining Arguments

There are three remaining arguments raised by the Defendants that this Court must address: first, Defendants summarily state that the counts in Plaintiffs' Amended Complaint discussed above must be dismissed because they otherwise fail to state a claim upon which relief maybe granted; second, Defendants argue that certain theories of Plaintiffs' Amended Complaint must be dismissed because they lack standing; and third, that the Court should refuse to exercise supplemental jurisdiction over Plaintiffs' territorial-law claims.

As to this first contention, no specific arguments are put forth by the Defendants. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially

---

[11] A dissociated member obtains the status of a transferee. See 13 V.I.C. § 1603(b)(1).

not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *see also United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) (citing *United States v. Hoffecker*, 530 F.3d 137, 163 (3d Cir. 2008)). Therefore, the Court does not consider such an argument to be adequately raised.

Defendants' second remaining contention is that Plaintiffs do not have standing to assert any claims or theories based upon events occurring after dissociation by the Plaintiffs. None of Plaintiffs' remaining claims, however, rely exclusively on events occurring after January 1, 2009, the date of Plaintiffs' dissociation.[12] The only remaining count subject to this motion that relies at all on events occurring after dissociation is Plaintiffs' Fraudulent Conveyance claim under count ten. This claim, however, is not brought by Plaintiffs' in their roles as members of the LLC. As discussed above, Plaintiffs' bring this claim in their roles as creditors to the LLC. *See supra* Part III.a.iv. Therefore, this argument is without merit.

Lastly, Defendants did not raise their supplemental-jurisdiction argument until their reply brief. It is axiomatic that "[a]n issue is waived unless a party raises it in its opening brief," *Laborers' Int'l Union of N.Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). Therefore, the Court will not consider this argument.

---

[12] Plaintiffs' RICO and CICO claims rely on events occurring in 2007, (*see* Compl. ¶¶139, 151), and Plaintiffs' Breach-of-Fiduciary-Duty claim relies on events occurring in 2005 through 2008, (*see* Compl. ¶¶ 88, 92, 169).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion will be granted in part and denied in part. Counts seven, nine, and eleven of Plaintiffs' Amended Complaint are hereby dismissed. An appropriate Order will follow.

Date: 2/14/12

_____
ANNE E. THOMPSON, U.S.D.J.